29 So.3d 505 (2009)
Zaidra Ardith GRIMES, individually and on behalf of her minor child, Zavian S. Walker, and Paul W. Walker
v.
LOUISIANA MEDICAL MUTUAL INSURANCE COMPANY; Karen Kay Solar, M.D.; Timothy George Andrus, M.D.; and Woman's Hospital of Baton Rouge/Woman's Hospital Foundation.
No. 2009 CA 0292.
Court of Appeal of Louisiana, First Circuit.
September 11, 2009.
Rehearing Denied December 9, 2009.
*506 Charles H. Munsterman, Alexandria, LA, for Plaintiffs/Appellees Zaidra A. Grimes, individually and on behalf of her minor child Zavian S. Walker, and Paul Walker.
Mary H. Thompson, Baton Rouge, LA, for Defendant/Appellee Woman's Hospital Foundation.
Tara S. Bourgeois, Herbert Mang, Jr., Baton Rouge, LA, for Defendants/Appellants Karen Kay Solar, M.D. and Timothy George Andrus, M.D. and Louisiana Medical Mutual Insurance Company.
Before CARTER, C.J., GUIDRY, and PETTIGREW, JJ.
GUIDRY, J.
In this medical malpractice action, defendants, Karen Kay Solar, M.D., Timothy George Andrus, M.D., and Louisiana Medical Mutual Insurance Company, appeal from a judgment of the trial court granting summary judgment in favor of defendant, Woman's Hospital Foundation (Woman's Hospital). For the reasons that follow, we reverse and remand.

FACTS AND PROCEDURAL HISTORY
On January 19, 2003, Zaidra Grimes was admitted to Woman's Hospital in labor under the care of obstetrician/gynecologist Dr. Karen Solar. During the course of delivery, a complication of shoulder dystocia occurred whereby the baby's shoulder became lodged on Ms. Grimes' pubic bone. After the McRobert's maneuver was performed, suprapubic pressure was applied, and assistance was requested, a baby girl, Zavian Walker, was born. It was later determined that Zavian suffered a brachial plexus injury during the delivery.
Thereafter, Zaidra Grimes, individually and on behalf of her minor child, Zavian, and Paul Walker, Zavian's father, filed a complaint with the Commissioner of Administration requesting formation of a medical review panel, asserting that Dr. Solar and Woman's Hospital failed to meet the appropriate standard of care in delivering Zavian. They also alleged that Dr. Solar and Dr. Andrus, the obstetrician/gynecologist who oversaw Ms. Grimes' prenatal care, failed to fully inform Ms. Grimes of the known risk factors of shoulder dystocia and failed to inform her of her right to elect a cesarean section when it was known that she was carrying a large baby and was at significant risk for the occurrence of a shoulder dystocia. On October 5, 2005, the medical review panel issued an opinion finding that there was no *507 breach in the standard of care by Dr. Solar, Dr. Andrus, or Woman's Hospital.
On January 17, 2006, Ms. Grimes, individually and on behalf of Zavian, and Mr. Walker filed a petition for damages, naming Dr. Solar, Dr. Andrus, Louisiana Medical Mutual Insurance Company (LAMMICO) and Woman's Hospital as defendants. In their petition, plaintiffs asserted that defendants failed to assess the risk of a shoulder dystocia complication, applied inappropriate and excessive traction and/or rotation on the head and neck of Zavian during delivery, and ordered and/or permitted an obstetrical nurse employed by Woman's Hospital to apply inappropriate pressure on Ms. Grimes' stomach in an attempt to deliver Zavian's left shoulder.
On February 28, 2007, Woman's Hospital filed a motion for summary judgment asserting plaintiffs were unable to establish that Woman's Hospital breached its duty to the plaintiffs or that any breach was the cause of plaintiffs' injuries. Specifically, Woman's Hospital relied on Hollingsworth v. Bowers, 96-257 (La.App. 3rd Cir.12/30/96), 690 So.2d 825, for the proposition that Dr. Solar was in control of the nurses during the delivery of Zavian and as such, Dr. Solar, and not Woman's Hospital, was liable for any alleged negligent conduct of the nurses present during the delivery. Woman's Hospital subsequently filed a motion to amend its motion for summary judgment to remove its argument regarding causation, thereby making the sole issue before the court the nurses' compliance with the orders and instructions of the treating physician during the delivery of Zavian, i.e. whether Dr. Solar, and not Woman's Hospital, was liable under Hollingsworth for the actions of the nurses during Zavian's delivery. Dr. Solar, Dr. Andrus, and LAMMICO opposed Woman's Hospital's motion for summary judgment.[1] Following a hearing, the trial court rendered judgment in favor of Woman's Hospital and dismissed plaintiffs' claims against it with prejudice. Dr. Solar, Dr. Andrus, and LAMMICO now appeal from this judgment.

DISCUSSION
On appeal, summary judgments are reviewed de novo, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. Lieux v. Mitchell, 06-0382, p. 9 (La.App. 1st Cir.12/28/06), 951 So.2d 307, 314, writ denied, 07-0905 (La.6/15/07), 958 So.2d 1199. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Independent Fire Insurance Company v. Sunbeam Corporation, 99-2181, p. 7 (La.2/29/00), 755 So.2d 226, 230-231.
The burden of proof on a motion for summary judgment is on the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an *508 absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to provide factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
A fact is material when its existence or nonexistence may be essential to plaintiffs cause of action under the applicable theory of recovery. Facts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute. Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Charlet v. Legislature of the State of Louisiana, 97-0212, p. 7 (La.App. 1st Cir.6/29/98), 713 So.2d 1199, 1203, writs denied, 98-2023, 98-2026 (La.11/13/98), 730 So.2d 934.
It is well established that a hospital can be liable for the negligence of its employees under the doctrine of respondeat superior. Little v. Pou, 42,872, p. 13 (La.App. 2nd Cir.1/30/08), 975 So.2d 666, 674, writ denied, 08-0806 (La.6/6/08), 983 So.2d 920. In a malpractice claim against a hospital, the plaintiff is required to prove by a preponderance of the evidence that the hospital, acting through its nurses, owed the plaintiff a duty to protect against the risk involved (or the applicable standard of care), that it breached that duty (or the applicable standard of care), and that the breach caused plaintiffs injury. See Little, 42,872 at p. 13, 975 So.2d at 674; Hypolite v. Columbia Dauterive Hospital, 07-357, p. 6 (La.App. 3rd Cir.10/3/07), 968 So.2d 239, 243.
In the instant case, Woman's Hospital asserts that based on the third circuit's decision in Hollingsworth, Dr. Solar, and not Woman's Hospital, is vicariously liable for any alleged negligence of the nurses employed by Woman's Hospital and present during Zavian's delivery because Dr. Solar was "in charge" of the delivery room. Hollingsworth involved facts substantially similar to those alleged in the instant case except that in Hollingsworth, plaintiffs voluntarily dismissed the hospital involved. In Hollingsworth, the third circuit, in upholding a physician's vicarious liability for a nurse's negligence in applying fundal pressure during a shoulder dystocia complication, stated:
Generally, physicians are in charge of all personnel in the operating room during the performance of the operation. Grant v. Touro Infirmary, 254 La. 204, 223 So.2d 1148 (1969), overruled on other grounds, Garlington v. Kingsley, 289 So.2d 88 (La.1974). The exception to this general rule occurs only when the personnel is not under the immediate supervision and control of the physician. Grant v. Touro Infirmary, supra; Parmelee v. Kline, 579 So.2d 1008 (La.App. 5th Cir.), writ denied, 586 So.2d 564 (La.1991). In this case, all the nurses testified that Dr. Bowers was in charge of the delivery room and the delivery. He was at all times present during the birth and in charge of the team of nurses.
Hollingsworth, 96-257 at p. 9, 690 So.2d at 830.
The "captain of the ship" doctrine developed at a time when hospitals were afforded charitable immunity and were shielded from liability flowing from their own employee's *509 negligence.[2] Courts, therefore, began to hold surgeons vicariously liable for all negligent acts committed by hospital employees during the treatment of that surgeon's patient. The imposition of liability rested on the theory that the hospital's employees became the surgeon's borrowed servants during surgery and was based on the surgeon's status as opposed to the surgeon's actual control over the particular employee. Johnston v. Southwest Louisiana Association, 96-1457, p. 8 (La.App. 3rd Cir.4/2/97), 693 So.2d 1195, 1199.
In Grant v. Touro Infirmary, 254 La. 204, 220-221, 223 So.2d 148, 154 (La.1969), the supreme court limited the "captain of the ship" doctrine and stressed the importance of immediate supervision and control by the surgeon in order to impose vicarious liability under a "borrowed servant" theory:
While it is the general rule that the surgeon is in charge of all personnel in the operating room during the performance of the operation, we do not feel that the evidence justifies the conclusion that, under modern medical operative procedures, it can be said that the borrowed servant doctrine applies in this case. For it is shown by the record that operations performed under modern techniques require team performance, and the nurses and other personnel assisting in the operating room are not at all times under the immediate supervision and control of the operating surgeon so as to bring the case strictly within the borrowed servant doctrine.
See also Parmelee v. Kline, 579 So.2d 1008, 1019-1020 (La.App. 5th Cir.), writ denied, 586 So.2d 564 (La.1991).
However, Grant was decided under prior law regarding borrowed servants. Previously, courts of this state recognized that under certain circumstances, an employer, called a "general employer," who had relinquished control of his employee to another employer, called a "special employer," may be legally absolved of liability for that employee's torts. Morgan v. ABC Manufacturer, 97-0956, p. 6 (La.5/1/98), 710 So.2d 1077, 1080. This legal fiction known as the "borrowed employee" was recognized by the supreme court in Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137 (La.1951). Under the "one master" rule of Benoit, the finding of borrowed servant status eliminated the possibility of vicarious liability on the part of the general employer. Liability was an either or issue: either the special employer was liable or the general employer was liable, but not both. Morgan, 97-0956 at p. 7, 710 So.2d at 1081. The "one master" rule, however, was repudiated in LeJeune v. Allstate Insurance Co., 365 So.2d 471 (La.1978) in favor of finding both the general employer and the special employer solidarity liable to third parties injured by the negligence of the borrowed employee. Morgan, 97-0956 at p. 9, 710 So.2d at 1082.
In Morgan, the supreme court reaffirmed the "two master" or "dual employer" rule as the more sensible rule, supported by the continuing development in the law of employer liability or respondeat superior. The court recognized that while the borrowed servant doctrine focuses on which employer controlled the employee's actions, modern justification for employer liability is not based so much on the employer's control of the employee's actions, but on the concept of enterprise liability. Morgan, 97-0956 at pp. 11, 710 So.2d at 1083. In quoting its decision in Ermert v. Hartford Insurance Co., 559 *510 So.2d 467 (La.1990), the court in Morgan stated:
The master's vicarious liability for the acts of its servant rests not so much on policy grounds consistent with the governing principles of tort law as in a deeply rooted sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities.
Morgan, 97-0956 at p. 11, 710 So.2d at 1083.
As such, in situations where the general employer's business is to loan out his or her employees and equipment to others, the general employer's business is being furthered even if he does not control the details of the work. Moreover, the special employer benefits: it is his work that is being done as well. In such situations, the relevant enterprise benefitted by the work consists of a combination of the general and special employers. See Morgan, 97-0956 at p. 12, 710 So.2d at 1083. Therefore, both the general and special employer are liable in solido for damages occasioned by the borrowed employee. See Morgan, 97-0956 at pp. 9-12, 710 So.2d at 1082-1083.
Accordingly, based on the law as outlined above, whether Dr. Solar was in charge of the delivery room and whether the nurses employed by Woman's Hospital were under her immediate supervision and control are not the controlling issues in determining whether Woman's Hospital can be held vicariously liable for the nurses alleged negligence. Rather, the issue is whether Woman's Hospital was the "general employer" of the nurses present during the delivery of Zavian and if so, susceptible to joint liability with Dr. Solar for any alleged negligence on the part of its nurses.
From the evidence in the record, there seems to be no dispute that Woman's Hospital was the general employer of the nurses at issue. Accordingly, if it is determined that the nurses were negligent in providing medical care during Zavian's delivery, even if determined to be at the direction of Dr. Solar, Woman's Hospital could still be found vicariously liable jointly with Dr. Solar under the legal precepts outlined above.[3] Therefore, we find that the trial court erred in applying Hollingsworth to absolve Woman's Hospital of any potential vicarious liability and in granting summary judgment in their favor.[4]

CONCLUSION
For the foregoing reasons, we reverse the judgment of the trial court granting summary judgment in favor of Woman's Hospital and dismissing plaintiffs' claims against it with prejudice and we remand this matter to the trial court for further *511 proceedings consistent with this opinion. All costs of this appeal are assessed to Woman's Hospital Foundation.
REVERSED AND REMANDED.
CARTER, C.J., Concurs.
PETTIGREW, J., concurs and assigns reasons.
PETTIGREW, J., concurring.
I agree with the majority's opinion. Further, I am of the opinion that the trial court made credibility and factual findings in the context of a summary judgment, which should have been reserved to the trier of fact. In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of material fact. Hines v. Garrett, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765. I find multiple issues of material fact still in dispute, and summary judgment was inappropriate.
NOTES
[1] Plaintiffs supported Woman's Hospital's motion for summary judgment to the extent that it asserted Hollingsworth v. Bowers, 96-257 (La.App. 3rd Cir. 12/30/96), 690 So.2d 825 governed the issue of the doctor's control of the nurses during the delivery and agreed that Woman's Hospital should be dismissed based on the fact that Dr. Solar was in charge of the delivery. However, plaintiffs specifically opposed a ruling by the court on the factual issues regarding fundal pressure, liability, and causation.
[2] The Louisiana Supreme Court rejected the concept of charitable immunity for hospitals in Garlington v. Kingsley, 289 So.2d 88 (La. 1974).
[3] Based on the evidence in the record, there seems to be a genuine issue of material fact as to whether the nurses applied fundal pressure during the delivery. Jessica Rodriguez, R.N., who was the nurse present during the delivery, stated that she did not apply fundal pressure because to do so would have been contraindicated. Likewise, Dr. Solar stated in her affidavit and deposition that she did not see a nurse apply fundal pressure and she did not order a nurse to apply fundal pressure. However, Dr. James O'Leary, plaintiffs' expert, stated in his deposition that based on the deposition testimony of Ms. Grimes, Mr. Walker, and Zavian's aunt, who were all present during the delivery, they described what he considered to be the classic application of fundal pressure.
[4] We reiterate that Woman's Hospital amended its motion for summary judgment prior to the hearing to remove is argument regarding causation from consideration and placed before the court determination of the sole issue of the nurses' compliance with the orders and instructions of the treating physician during the delivery of Zavian.